IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| DEISY DAVILA BAUTISTA, as personal representative of the Estate of ANGIE ZUE BROOKS and as Guardian of JANNIEL BROOKS, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Civil No. 2021-18 |

## MEMORANDUM OPINION and ORDER

Before the Court is Francis Brooks' motion for intervention under Federal Rule of Civil Procedure 24(a). [ECF 67]. Plaintiffs and the United States oppose the motion [ECFs 80, 81], and Mr. Brooks replied to the oppositions. [ECFs 82, 83]. The Court heard oral argument on June 23, 2023, *see* [ECFs 85, 88], and the matter is ripe for decision. For the reasons explained below, the Court will deny the motion to intervene.

### I.   BACKGROUND

Deisy Bautista brought this Federal Tort Claims Act ("FTCA") action as personal representative of Angie Zue Brooks and guardian of Janniel Brooks ("Baby Brooks"). [ECF 1]. Ms. Bautista is Angie's mother and the grandmother of Baby Brooks, and has been caring for Baby Brooks since his release from the hospital following his birth. [ECF 80] at 2–3. Mr. Brooks is Angie's spouse, and although named on the birth certificate, he is not the biological father of Baby Brooks. *See* [ECFs 67 at 8, 72-2].[1]

---

[1] Mr. Brooks was incarcerated from 2012 to 2020. Baby Brooks was born on January 29, 2017. [EF 72-2].

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 2 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 2

The complaint asserts medical malpractice claims against the United States stemming from the alleged negligent prenatal care provided to Angie Brooks at St. Thomas East End Medical Center Corporation in January 2017. [ECF 1]. According to the complaint, as a result of defendants' negligence, Angie went into cardiac arrest during labor and hemorrhaged, causing permanent brain damage, and Baby Brooks suffered severe and permanent injury to his brain and body. *Id.* ¶ 35. Angie was in a permanent vegetative state from the time of her injury until her death on October 30, 2019. *Id.* ¶¶ 7–8.

On October 25, 2017, the Superior Court entered an order appointing Ms. Bautista as the permanent unlimited guardian of Angie and Baby Brooks. [ECF 80-1]. That order provides Ms. Bautista "with unlimited power to make decisions concerning their health, support, care, education, and welfare." *Id.* at 3. The order further provides that:

> [Ms.] Bautista shall have power to have custody and control of Angie Zue Brooks and Janniel Brooks, including the management of all of their estates, paying debts, settling accounts, and applying for and receiving income payable to the wards or the wards' guardian, thereof during the legal continuance of the guardianship; and she is authorized and directed to take all steps necessary for the protection and advancement of the rights and interests of [the wards], until the guardian shall have been discharged according to law . . .

*Id.* at 4.

On August 29, 2019, Ms. Bautista filed administrative tort claims with the U.S. Department of Health and Human Services seeking damages for the personal injuries suffered by Angie and Baby Brooks. [ECFs 29-1, 29-2]. The claims were denied on March 3, 2020. [ECF 81] at 2.

Plaintiffs filed this action on February 23, 2021. [ECF 1].[2] On November 2, 2021, the

---

[2] Plaintiffs first filed a complaint in Superior Court on December 27, 2018. *See* 19-cv-116 [ECF 1-1]. That case was removed to this Court on December 9, 2019, *see id.* [ECF 1], and subsequently dismissed for failure to exhaust

United States moved to dismiss this matter as untimely. [ECF 28]. That motion remains pending before the District Court. On January 19, 2023, the parties filed a joint notice of settlement. [ECF 64]. One month later, on February 21, 2023, Mr. Brooks filed his motion to intervene. [ECF 67].

Mr. Brooks argues that as the lawful spouse of decedent Angie Brooks, and the sole custodian and guardian of Baby Brooks, he is the real party in interest "in any and all matters related to the results, products, compensation, monetary or otherwise, relating to the death of his deceased wife." [ECF 67] at 1. He thus contends that Ms. Bautista lacks standing to make any claims against the United States related to Angie's death, and that he is the proper person to act as personal representative and guardian in this action. Mr. Brooks further argues that he has a lawful and legal interest in the outcome of this case, that he and Angie's other children have interests not adequately represented by Ms. Bautista or her counsel,[3] and that his interest will be lost once the settlement documents are executed and funds dispersed. *Id.* at 3; [ECF 82] at 3–4.

At oral argument, Mr. Brooks testified under oath that Ms. Bautista never told him about any of the Superior Court proceedings. She told him about this action around September 2020, following his release from prison, but she was not very forthcoming with sharing information. He learned more about this case in late 2022 and obtained a copy of the complaint from the Clerk's Office. He then learned about the settlement in February 2023 by asking a friend to check the docket for him. Mr. Brooks expressed that he is seeking to intervene because he wants to take care of his family, and stated he has always been responsible for making sure the children were cared for, even during his incarceration.[4]

---

administrative remedies. *Bautista v. St. Thomas E. End Med. Ctr. Corp.*, 2020 WL 4677517 (D.V.I. Aug. 12, 2020).

[3] At oral argument, Mr. Brooks explained that he and Angie share a biological daughter, and he has also raised Angie's oldest son from a previous relationship.
[4] Mr. Brooks stated that during his incarceration, he gave his mother power of attorney so that she could ensure Angie

*Deisy Davila Bautista v. The United States of America, et al.*
Civil No. 2021-18
Page 4

      In opposition, Ms. Bautista primarily relies on Virgin Islands Rule of Civil Procedure 17(e) to argue there is no benefit, reason, or law that would permit her to be substituted or replaced as the personal representative in this action. [ECF 80] at 5–7.[5] She contends Mr. Brooks took no interest in Angie or Baby Brooks while incarcerated, and only moved to intervene here after the parties filed the notice of settlement. *Id.* at 4–5. Ms. Bautista further states neither she nor Baby Brooks will receive any money from the settlement because all funds, minus attorneys' fees and costs, will go to Medicare liens. *Id.* at 7. At oral argument, counsel emphasized that Ms. Bautista has been an active participant in this case, and that as the grandmother to all of Angie's children, she has an interest in all of them.

      The United States opposes the motion on several grounds, first arguing that Mr. Brooks has offered no legitimate reason for the delay in filing his motion, and that "the untimeliness in moving to intervene will unduly delay these proceedings and prejudice [the parties]." [ECF 81] at 3, 5. Additionally, Mr. Brooks has other recourse available to assert his purported interests. *Id.* at 5–6. The United States further argues that permissive intervention is also inappropriate because Mr. Brooks cannot show an independent basis for the Court's subject matter jurisdiction. *Id.* at 6–10. Specifically, Mr. Brooks did not file an administrative claim on his own behalf and is time-

---

and the children were taken care of financially. When Angie was hospitalized in 2017, he gave his sister temporary custody of the older children so they would not be separated. Even though Baby Brooks is not his biological son, he authorized insurance payments for Angie and the baby because he did not want Angie to suffer any financial hardship that could affect their other children.

[5] Rule 17(e) provides that:

> In wrongful death suits filed under 5 V.I.C. §76 and in survival actions filed under 5 V.I.C. § 77, the action may be prosecuted in the name of a plaintiff identified in the complaint as acting as a personal representative. The named plaintiff shall serve as personal representative throughout the proceeding unless replaced by order of the court.

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 5 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 5

barred from doing so now, and thus lacks standing to bring an FTCA action. *Id.* at 3.[6] The Court therefore lacks jurisdiction over Mr. Brooks' potential claims arising from the injuries to Angie and Baby Brooks. *Id.* Finally, the United States notes that the motion fails to comply with Rule 24(c)'s requirement to file a pleading setting forth the claim(s) for which intervention is sought. *Id.* at 4.

## II. LEGAL STANDARDS

### A. Rule 24 Intervention

Federal Rule of Civil Procedure 24 provides that on timely motion, the Court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).[7] The rule further provides that the Court may permit anyone to intervene

---

[6] In reply to the United States' opposition, Mr. Brooks argued that the limitations period to file an administrative claim should start to run from the date the parties filed their notice of settlement, "when the Defendant *affirmatively admitted* injuries, harms and damages to Brooks, because of the death of his wife, and . . . injuries to . . . [Baby] Brooks." [ECF 83] at 2. At oral argument, the United States agreed with the Court that procedurally, once an administrative claim is denied and the claimant files a civil suit, the government may argue for dismissal based on timeliness, and the Court may consider whether equitable tolling applies. *See United States v. Wong*, 575 U.S. 402 (2015); *Santos ex rel. Beato v. United States*, 559 F.3d 189, 194–95 (3d Cir. 2009).

[7] Additionally, "[i]n this context, as in any other, standing is a 'threshold issue.'" *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017)). "For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Chester*, 581 U.S. at 439. Accordingly, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* at 440. "Th[is] includes cases in which both the plaintiff and the intervenor seek separate money judgments in their own names." *Id.* Courts "therefore ha[ve] a duty, before passing on the merits of the [] motion to intervene, to determine whether the [movant] must demonstrate Article III standing—whether, that is, they seek relief 'different from that which' [the plaintiff] requests." *Wayne*, 959 F.3d at 574 (citation omitted).

who: "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its direction to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The party seeking to intervene, whether as a matter of right or permissively, bears the burden of demonstrating that intervention is appropriate. *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982).

Additionally, a Rule 24 movant must serve on the parties a copy of his motion accompanied by a pleading setting forth the claim or defense for which intervention is sought. Fed. R. Civ. P. 24(c). Failure to comply with Rule 24(c)'s pleading requirement may result in summary dismissal of the motion. *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 410 (W.D. Pa. 2006) (but noting "it is rare that only procedural grounds are proffered for denial"). However, courts have discretion to waive procedural defects and may do so based on "the merits of the motion itself, the lack of prejudice to the parties, and the principle that Rule 24 is intended simply to notice the parties as to the applicant's position and arguments." *Id.* at 411 (collecting cases).

B. **The Federal Tort Claims Act**

> "As a sovereign, the United States is immune from suit unless it consents to be sued." The FTCA represents "a limited waiver of th[at] sovereign immunity," providing that "[t]he United States shall be liable, respecting . . . [certain] tort claims, in the same manner and to the same extent as a private individual under like circumstances."

*D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 749 (3d Cir. 2020) (alterations in original)

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 7 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 7

(internal citations omitted); *see* 28 U.S.C. § 1346(b)(1) (granting federal district courts exclusive jurisdiction over such actions). "[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court." *Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011) (citation omitted). "Accordingly, 'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'" *Id.* (citation omitted).

"As a prerequisite to suit under the Act, claimants must exhaust administrative remedies before '[a]n action shall . . . be instituted upon a claim against the United States.'" *Knapp v. United States*, 2022 WL 3657184, at *4 (3d Cir. Aug. 25, 2022) (quoting 28 U.S.C. § 2675(a)). The Third Circuit holds that "[t]his requirement is jurisdictional and cannot be waived." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015). The FTCA also prescribes time limitations for commencing an action against the United States. To bring a claim under the FTCA, a claimant must file an administrative claim with the agency allegedly responsible for his injuries "within two years after such claim accrues." 28 U.S.C. § 2401(b); *Santos*, 559 F.3d at 193. The claimant must then bring his federal court action within six months of the agency's denial. 28 U.S.C. § 2401(b); *see* 28 U.S.C. § 2675(a) (if the agency fails "to make final disposition of a claim within six months after it is filed," the claimant may proceed to file his case in federal court); *see also Sconiers v. United States*, 896 F.3d 595, 598 (3d Cir. 2018) ("both conditions [of 28 U.S.C. § 2401(b)] must be satisfied in order for a plaintiff to properly bring a claim under the FTCA"). The two-year and six-month limitation periods are not jurisdictional and are subject to equitable tolling. *Wong*, 575 U.S. 402; *accord Santos*, 559 F.3d at 194–95 ("the FTCA's statute of limitations is not jurisdictional, and thus in appropriate circumstances the equitable tolling doctrine can apply in actions under it").

While a court's adjudication of claims brought under the FTCA is governed by the substantive "law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), "[q]uestions of practice and procedure in Federal Tort Claims Act cases are determined by application of the Federal Rules of Civil Procedure." Daniel A. Morris, Federal Tort Claims § 2:32 (2022).[8] Relevant to the instant case, "the Third Circuit has ruled that intervention is a procedural, not substantive, rule." *Est. of Kelly ex rel. Gafni v. Multiethnic Behav. Health, Inc.*, 2009 WL 2902350, at *5 (E.D. Pa. Sept. 9, 2009) (citing *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 229 (3d Cir. 2005)). "Accordingly, for federal courts ruling on state law causes of action, Federal Rule of Civil Procedure 24 provides the relevant standard for intervention regardless of any state procedural rule which would require, allow, or prohibit intervention." *Id.*[9]

### III. DISCUSSION

#### A. Mr. Brooks' Application Fails to Satisfy Rule 24(a)

Francis Brooks seeks intervention as a matter of right under Rule 24(a)(2). In the Third Circuit, this requires proof of four elements:

> [F]irst, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

---

[8] *See Mader v. United States*, 654 F.3d 794, 797 n.1 (8th Cir. 2011) ("The 1946 version of the FTCA expressly made the Federal Rules of Civil Procedure applicable to actions against the United States. But, in 1948, Congress removed this express language 'as unnecessary because the Rules of Civil Procedure . . . shall apply to all civil actions.'") (quoting *United States v. Yellow Cab Co.*, 340 U.S. 543, 553 n.9 (1951))).

[9] Additionally, while a state statute may permit a plaintiff to simultaneously pursue wrongful death and survival claims in one cause of action, *see Crawford v. Daly*, 55 V.I. 66, 90 (V.I. Super. 2010), the FTCA requires a claimant to file separate administrative claims for personal injury and wrongful death in order to file suit on both claims. *See Clayton v. United States*, 913 F. Supp. 2d 80, 86 (D.N.J. 2012) (FTCA requirement that "'*each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government' . . . applies without exception" (citation omitted)).

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 9 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 9

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). "The moving party . . . bears the burden of establishing the right to intervene, and failure to satisfy any one of the four factors justifies denial of the request." *Pa. Gen. Energy Co. v. Grant Township*, 658 F. App'x 37, 40 (3d Cir. 2016). Nevertheless, "[t]here is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012). While the Court has some questions regarding the timeliness of Mr. Brooks' motion based on the testimony presented, the Court will focus its analysis on the sufficiency of Mr. Brooks' interest and the adequate representation of that interest.

Rule 24 does not detail what kind of interest a party must have to intervene as a matter of right, but the Supreme Court has held that "[w]hat is obviously meant . . . is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971).[10] "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler*, 157 F.3d at 972. In other words, "intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Id.* This fact-specific inquiry requires the Court to examine "(1) the *reality* of the interest—does the litigation pose a 'tangible threat' to the applicant or simply a speculative one?—and (2) the *nature* of the interest, e.g., is it a 'mere economic interest'?" *Id.* at 976. "[W]hen the interest at issue is both real and legally cognizable (through contract, statute, or a property right), [courts] have found it to meet the requirements of Rule 24(a)(2)." *Id.*

---

[10] As the Third Circuit has observed, "[t]he most difficult question in many intervention cases . . . is the nature of the proposed intervenors' interest and whether this interest is sufficient to meet the requirements of Rule 24(a)(2)." *Kleissler*, 157 F.3d at 975–76 (Becker, J., concurring).

Case: 3:21-cv-00018-RAM-RM   Document #: 92   Filed: 07/24/23   Page 10 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 10

Here, Mr. Brooks has a general interest in the subject matter of this case based on the injury defendants allegedly caused to his wife and baby resulting in permanent harm to both, which indisputably caused Mr. Brooks and his children emotional harm and loss. Most pertinent to Rule 24(a), Mr. Brooks' interest in this litigation is as a potential beneficiary of any damages awarded to his deceased wife that accrue to her estate.[11] The Court is not convinced, however, that this is sufficient to show a significantly protectable interest, as "a mere economic interest in the outcome of the litigation is [generally] insufficient to support a motion to intervene." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).[12]

The opinion in *Estate of Kelly* is instructive. There, the district court rejected a Rule 24 motion where the movants asserted legal interests in the litigation based on their status as potential beneficiaries of the decedent's estate. The court determined that although the movants had cognizable interests in the wrongful death and survival claims because they stood to benefit from any damages awarded, they did not have a sufficient legal interest in the litigation because they had no independent rights or claims to assert. *Kelly*, 2009 WL 2902350, at *6–7. The court

---

[11] Assuming Angie died intestate, under Virgin Islands law, one-third of her estate would go to Francis Brooks, and the remainder would be distributed in equal portions to her children. 15 V.I.C. § 84(1).

[12] The Court rejects any argument by Ms. Bautista that Mr. Brooks lacks a legally cognizable interest in this action solely because under territorial law, he is not the proper party to bring this suit on behalf of Angie and Baby Brooks. *See Kelly*, 2009 WL 2902350, at *5 ("Federal Rule of Civil Procedure 24 provides the relevant standard for intervention regardless of any state procedural rule which would require, allow, or prohibit intervention."). As one district court explained,

> In a motion to intervene under Rule 24(a)(2), the question is not whether the applicable law assigns the prospective intervenor a cause of action. Rather, the question is whether the individual may intervene in an already pending cause of action. As the Rule's plain text indicates, intervenors of right need only an "interest" in the litigation—not a "cause of action" or "permission to sue."

*Jones v. Prince George's County*, 348 F.3d 1014, 1017–18 (D.C. Cir. 2003) (citation omitted). Thus, whether Mr. Brooks lacks a cause of action under the "bare language" of Virgin Islands law does not by itself prevent him from intervening in this case. *See id.* at 1018 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972)).

reasoned:

> Their interests are entirely derivative of [the decedent's] rights, which are asserted by the plaintiff, who, as the personal representative of the Estate, is the sole person authorized by state law to prosecute the survival action and wrongful death action. Further, the Objectors' interests in the litigation are contingent on . . . a determination by the Orphan's Court with regard to the distribution of the Estate.

*Id.* at *7. The court concluded that "[s]uch derivative, contingent interests are not sufficient for intervention as a matter of right under Rule 24(a)(2)." *Id.* The court further found that the movants failed to establish inadequate representation, reasoning in part that because the "plaintiff serves in a representative capacity, his interests are completely aligned with Objectors' interests, which are protected by virtue of the fact that the current plaintiff owes a fiduciary duty to beneficiaries of the Estate and the wrongful death action." *Id.* at *8.

Here, as in *Kelly*, Mr. Brooks has a cognizable derivative interest in the survival claims brought on Angie's behalf. And if, as Ms. Bautista states, there is an outstanding Medicare lien, Mr. Brooks' interest is even more tangential because it is dependent on whether there are any monies remaining after satisfaction of the lien that accrue to Angie's estate.

Even if Mr. Brooks' interest is both "real and legally cognizable," *Kleissler*, 157 F.3d at 976, to meet the fourth prong of Rule 24(a), he must still "show that his interests are not adequately represented by the existing parties." *Sheesley*, 239 F.R.D. at 409 (citation omitted). The "most important factor" in this analysis is "how the interest of the absentee compares with the interest of the present parties." *Mountain Top*, 72 F.3d at 368 (citation omitted). The Court will find the representation inadequate "on any of the following three grounds:"

> (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 12 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 12

> between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit.

*Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).

Here, there is no credible claim of collusion between the parties, nor does Mr. Brooks assert lack of diligence by Ms. Bautista. Rather, Mr. Brooks contends that as Angie's lawful spouse, and as the father of Baby Brooks stated on the birth certificate, he is the real party in interest in this case. He thus argues that his interests are not adequately represented by Ms. Bautista because she is not the proper party to bring the claims and is "simply money grubbing," and because she has "antagonistic views" of his "superior claim." [ECF 67] at 3. Without delving into too many complexities of the FTCA and Virgin Islands law, and assuming Ms. Bautista properly and timely filed administrative personal injury claims for Angie and Baby Brooks, there is simply nothing to indicate that Ms. Bautista may not bring this FTCA action on their behalf.[13] Nor has Mr. Brooks pointed to any facts suggesting that Ms. Bautista has acted inappropriately in pursuing damages in this action.[14]

---

[13] As noted above, that Virgin Islands law allows Ms. Bautista to bring a wrongful death or survival action as personal representative for Angie does not in and of itself preclude Mr. Brooks' intervention in this matter under Federal Rule of Civil Procedure 24(a). However, the FTCA contains administrative exhaustion requirements that require "*each* claim and *each* claimant [to] meet the prerequisites for maintaining a suit against the government." *Clayton*, 913 F. Supp. 2d at 86 (citation omitted). The Superior Court appointed Ms. Bautista as permanent unlimited guardian of Angie and Baby Brooks, inclusive of the right to pursue legal actions on their behalf, and she did file administrative personal injury claims on their behalf. *See* [ECF 80-1] at 4 (Superior Court order granting Ms. Bautista the power "to take all steps necessary for the protection and advancement of the rights and interests of [the wards]"); *see also* 15 V.I.C. § 601 (causes of action survive to the decedent's personal representative).

[14] To the extent Mr. Brooks is dissatisfied with the settlement that will reportedly go only to Medicare liens and attorney's fees—and thus no money to Angie's estate that Mr. Brooks may be a beneficiary of—the Court "rejects any implied contention that representation becomes inadequate whenever the representative is unsuccessful in urging a position." *Pennsylvania v. Rizzo*, 530 F.2d 501, 506 (3d Cir. 1976) ("adequate representation may or may not be successful representation"); *see also Kelly*, 2009 WL 2902350, at *8 ("Objectors fail to appreciate the difference between an intervenor's interest in the litigation and an intervenor's interest in the litigation strategy. The first is a proper basis for intervention; the second is not."). Though the Court may have questions about the terms of the settlement because it is represented that all funds will go to attorney's fees and Medicare, the Court must presume that counsel is putting the interests of her clients before her own and not taking excessive fees. The Court will have the opportunity to review these amounts when the parties seek approval of the settlement. As this Court has previously

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 13 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 13

While a party who is "unwilling to raise claims or arguments that would benefit the putative intervenor may qualify as an inadequate representative in some cases, this is not such a case." *Jones*, 348 F.3d at 1019–20. Under Virgin Islands law, both Mr. Brooks and Angie's children are the statutory beneficiaries of any money paid for Angie's injury that would now go to her estate. *See* 5 V.I.C. § 77 (damages recovered in survival action go to estate of deceased); 15 V.I.C. § 84(1) (estate is distributed to decedent's spouse and children). Therefore, Mr. Brooks' interest in this action is equal in nature to the children's interest. As Ms. Bautista's counsel noted at oral argument, she is grandmother to all the children and has an interest in all of them. Accordingly, because Mr. Brooks and the children stand in each other's shoes, Ms. Bautista protects all of their interests in this action.

The Court appreciates Mr. Brooks' statement that he is seeking to intervene because he wants to take care of his family. The Court also acknowledges Mr. Brooks' position that Ms. Bautista has not been cooperative in sharing information with him regarding this lawsuit, or any of the Superior Court actions. However, the Court cannot find that this history of "acrimonious

---

explained,

> "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interest of the minor.'"
> . . .
> In the Virgin Islands, "[a] court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem."

*Davila v. Virgin Islands Taxi Ass'n*, 2019 WL 5270202, at *1, 3 (D.V.I. Oct. 17, 2019) (internal citations omitted); *see also Reo v. U.S. Postal Serv.*, 98 F.3d 73, 76 (3d Cir. 1996) ("Courts uniformly look to state law to determine the validity of settlements entered between the government and [an FTCA] claimant . . . .").

Case: 3:21-cv-00018-RAM-RM   Document #: 92   Filed: 07/24/23   Page 14 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 14

relations" may have influenced Ms. Bautista's conduct of the litigation to Mr. Brooks' detriment. *Jones v. Fondufe*, 908 A.2d 1161, 1164 (D.C. 2006) (divergence of interests where decedent's parents were in potential conflict regarding distribution of any money damages). The Court must emphasize that this action was brought by Ms. Bautista in her capacity as the personal representative of Angie's estate and the guardian of Baby Brooks. Her role is to assert the rights belonging to them. Ms. Bautista stands to gain nothing personally because she is not suing defendants on her own behalf, and, to the Court's knowledge, has filed no administrative claims on her own behalf. As discussed above, Mr. Books' interest in this action primarily hinges on his status as a potential beneficiary of any award that may go to Angie's estate—the same interest that Angie's children have. Thus, Ms. Bautista's alleged failure to cooperate with Mr. Brooks, or to include his name or his children's names as parties to this action, simply has no bearing on her representative adequacy for purposes of Rule 24(a).[15]

In sum, the Court finds that although Mr. Brooks has an interest in this litigation, he has not met his burden to demonstrate that the representation of his interests by the existing parties may be inadequate. *Kleissler*, 157 F.3d at 969, 974. Accordingly, the Court will deny the motion to intervene as a matter of right because Mr. Brooks has not shown inadequate representation under Rule 24(a).

**B. Mr. Brooks' Application Also Fails to Satisfy Rule 24(b)**

Though Mr. Brooks moved to intervene as of right, the Court further finds that permissive

---

[15] Nor are Mr. Brooks' unsuccessful attempts to speak with Ms. Bautista's counsel sufficient to show inadequacy. *See Jones*, 348 F.3d at 1020 ("[E]ven if . . . [plaintiff's] counsel has refused to cooperate or share information with [intervenor's] lawyers . . . this alleged deficiency says little about [plaintiff's] representative adequacy for purposes of Rule 24(a)(2). Indeed, we cannot imagine why an existing party would bear such an obligation to a prospective intervenor."); *see also Kelly*, 2009 WL 2902350, at *9 (stating that although court would deny intervention, "nothing bars Objectors from communicating directly with plaintiff, their representative, to ensure that he protects their interests").

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 15 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 15

intervention is also not appropriate in this case. "To establish that intervention is warranted under Rule 24(b), the intervenor must demonstrate: (1) an independent basis for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a common question of law or fact with the primary litigation." *Barrett v. McDonald*, 2015 WL 237165, at *2 (D. Del. Jan. 16, 2015); *accord Southland Gaming of V.I., Inc. v. Gov't of the V.I.*, 2019 WL 2106569, at *2 (D.V.I. May 14, 2019) (citing *Beach v. KDI Corp.*, 490 F.2d 1312, 1319 (3d Cir. 1974)). In making this determination, courts should "consider whether the proposed intervenors will add anything to the litigation," *Kitzmiller v. Dover Area Sch. Dist.*, 388 F. Supp. 2d 484, 486 (M.D. Pa. 2005), and whether their interests are already adequately represented in the litigation. *Hoots*, 672 F.2d at 1136 ("where . . . the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue'"). Furthermore, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, Mr. Brooks cannot meet the requirement of independent jurisdictional grounds. The Third Circuit holds that the FTCA's administrative exhaustion requirement is jurisdictional and cannot be waived, and there is no dispute that Mr. Brooks did not file any administrative claims—at least not until after he moved to intervene. *See* [ECF 83-1] (in his reply to the United States' opposition, Mr. Brooks attached an administrative claim form dated April 11, 2023, seeking personal injury and wrongful death damages for the injuries to Angie and Baby Brooks on behalf of himself and his minor children). Mr. Brooks must now wait until the agency denies his claim, or until six months have passed without receiving notice of a denial, whichever comes first, before filing suit in federal district court. *See* 28 U.S.C. § 2675(a). The Supreme Court has instructed

Case: 3:21-cv-00018-RAM-RM Document #: 92 Filed: 07/24/23 Page 16 of 17

Deisy Davila Bautista v. The United States of America, et al.
Civil No. 2021-18
Page 16

that "[t]he most natural reading of the [FTCA's administrative exhaustion provision] indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." *McNeil v. United States*, 508 U.S. 106, 112 (1993). Thus, a plaintiff must satisfy exhaustion before commencing suit. Reading the FTCA and Rule 24 together, a Rule 24 movant must meet the FTCA's requirement to exhaust administrative remedies before instituting an action against the United States prior to filing a Rule 24 motion to intervene in an action that has already been instituted. *See Clayton*, 913 F. Supp. 2d at 86 (FTCA rule that "'*each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government' . . . applies without exception" (citation omitted)). As such, Mr. Brooks cannot currently show an independent basis for the Court's subject matter jurisdiction. *See Pennsylvania v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11, 24 (3d Cir. 1975) ("If jurisdiction is not established under the Act through compliance with its requirements, jurisdiction cannot be established at all. There is no general statutory jurisdiction over actions against the United States, and thus if the conditions by which the United States has consented to be sued are not met, subject matter jurisdiction is lacking."), *overruled on other grounds as recognized in Livera v. First Nat. State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989); *see also Schultz v. United States*, 2015 WL 5672655, at *3 (W.D. Pa. Sept. 25, 2015) (purpose of administrative exhaustion requirement "is to provide the government with notice of all claims being asserted against it in order to avoid unfair surprise and to promote fair and expeditious settlement or defense of the government's liabilities").

Furthermore, even if Mr. Brooks could demonstrate independent jurisdictional grounds sufficient for purposes of Rule 24(b), the Court finds that granting permissive intervention would unduly delay the proceedings and prejudice the adjudication of the original parties' rights. Ms. Bautista has been pursuing personal injury claims on behalf of Angie and Baby Brooks since she

first filed suit in Superior Court in 2018. The instant action was filed over two years ago, and in January 2023, the parties reached a settlement agreement in principle. At oral argument, counsel for the United States averred that the settlement documents are signed, but stated everything has been on hold due to Mr. Brooks' motion. To allow Mr. Brooks to intervene now would thus prejudice the parties by delaying resolution of a matter that has been pending in one forum or another for over four years. Additionally, the United States indicated that if intervention is granted, it will challenge Mr. Brooks' standing based on his failure to exhaust administrative remedies, thereby further delaying the proceedings until the Court's resolution of that issue. Moreover, even if the Court stayed this action until Mr. Brooks' administrative claim is technically exhausted (whether by agency denial or six months elapses), the Court would then have to address the United States' argument on timeliness and determine whether equitable tolling applies. In short, allowing Mr. Brooks to intervene at this juncture would unduly delay the final adjudication of the original parties' rights.

Accordingly, in an exercise of its discretion, the Court finds that Mr. Brooks has also not met the requirements for permissive intervention.

### IV.   CONCLUSION

Accordingly, the premises considered,

IT IS ORDERED that the Motion for Intervention [ECF 67] is DENIED.

**Dated:** July 24, 2023

S_____
**RUTH MILLER**
United States Magistrate Judge